**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF PUERTO RICO**

| IN RE:<br><br>**RAMON EUSEBIO NAVEDO RIVERA**<br>**TANIA ORONA JIMENEZ**<br><br>DEBTOR | CASE NO. 11-00716 BKT<br><br>CHAPTER 12 |
|---|---|

**FIRST AMENDED CHAPTER 12 PLAN – March 30, 2011**

The above captioned debtors, Ramon Eusebio Navedo Rivera and Tania Orona Jimenez, by and through the undersigned counsel, hereby submits the following proposed plan of reorganization pursuant to the provisions of 11 U.S.C. Section 1201, et seq., and specifically to 11 U.S.C. Section 1222.

Pursuant to the provisions of Sections 1222 of the Code, debtor proposes the classification and treatment of claims as hereinafter stated.

Creditors and other parties in interest are urged to read and consider this Plan in its entirety since this represents a proposed legally binding agreement between the debtor, creditors and parties in interest.

**ARTICLE I**
**DEFINITIONS**

For the purposes of this Plan of Reorganization, the following terms shall have the respective meanings set forth.

1. **"Administrative Creditor"** shall mean a person entitled to payment of an Administrative Expense Claim.

2. **"Administrative Expense Claim"** shall mean any Claim constituting a cost or expense of administration of the Chapter 12 proceedings allowed under 11 U.S.C. Sec. 503(b) and 507(a)(1).

3. **"Allowed Claim"** shall mean any Claim as allowed pursuant to 11 U.S.C §502.

Unless otherwise provided for in this Plan, "Allowed Claim" shall not include interest, cost, fees, expenses or other charges on the principal amount of such Claim from after the Petition Date.

4. **"Allowed secured Claim"** shall mean any Allowed Claim, which is a Secured Claim and shall include in the amount thereof – unless otherwise stated in this Plan – all interest accrued on or after the Petition Date, fees, costs, and charges as may be allowed.

5. **"Bankruptcy Code"** or **"Code"** shall mean the provision of Title 11 of the United States Code, 11 U.S.C. Sections 1201 et seq., as amended from time to time.

6. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over these Chapter 12 proceedings.

7. **"Bankruptcy Rules"** or **"Rules"** shall mean the Federal Rules of Bankruptcy Procedures, as amended from time to time.

8. **"Bar Date"** shall mean the deadline of June 1, 2011 for all general unsecured creditors and August 1, 2011 for all governmental creditors, after which any proof of claim filed will not have any effect on this Plan and will not entitle its holder to participate with other Claims under this Plan.

9. **"Claim"** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10. **"Class"** shall mean a category of holders of Claims or Interest that is substantially similar to other claims or interest in such Class.

11. **"Confirmation Date"** shall mean the date the Order of Confirmation in this Chapter 12 proceeding and becomes a Final Order.

12. **"Consummation Date"** shall mean the date by which all of the conditions precedent to full consummation set forth in this Plan, shall have be met or waived.

13. **"Creditor"** shall mean any Person who has a Claim against the Debtor, which arose on or before the Petition Date or a Claim of any kind specified in 11 U.S.C. Sections 502(g), 503(h) or 502(I).

14. **"Debtor"** shall mean case **11-00716 BKT-12** of Ramon Eusebio Navedo Rivera and Tania Orona Jimenez.

15. **"Effective Date of the Plan"** shall mean thirty (30) days after the order of confirmation of the plan, becomes a final order and shall b e the date on which there shall be made all cash payments required by the Plan.

16. **"Estate"** shall mean the property owned by the Debtor that comprises the Chapter 12 estate of the Debtor in the above-captioned Chapter 12 proceeding.

17. **"Final Order"** shall mean an Order of the Bankruptcy Court (or other court of appropriate jurisdiction) which shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired, and about which, no appeal or petition for review or rehearing or certiorari proceedings is pending, as a result of which such Order shall have become final according to Rule 8002 of the Rules of Bankruptcy Procedure, as such Rules may be amended from time to time.

18. **"Lien"** shall mean a mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on Property as is effective under applicable law as of the Petition Date.

19. **"Liquidation"** shall mean the complete liquidation of the Property of Debtor's Estate, by a duly appointed trustee, according to the provisions of Chapter 7 of the

3

Bankruptcy Code.

20. **"Liquidation Analysis"** shall mean the comparison of the current assets and liabilities of the Debtor, in order to determine the Liquidation Value of the Debtor's Property.

21. **"Liquidation Value"** shall mean the value that, any item of the Debtor's Property could be expected to bring during Liquidation.

22. **"Order of Confirmation"** shall mean the Order of the Bankruptcy Court confirming this Plan, pursuant to 11 U.S.C. § 1225.

23. **"Person"** shall mean any individual, corporation, partnership, association, Joint Stock Company, trust, unincorporated organization, government or any political subdivision thereof, or other entity.

24. **"Petition Date"** shall mean **January 31, 2011**; the date on which the Debtor's filing of his Voluntary Petition commenced the instant Chapter 12 proceedings.

25. **"Priority Claim"** shall mean any Allowed Claim, other than an Administrative Expense Claim or Priority Tax Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a).

26. **"Priority Creditor"** shall mean any Creditor that is the holder of a Priority Claim.

27. **"Priority Tax Claim"** shall mean any Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507(a)(8).

28. **"Priority Wage Claim"** shall mean Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507(a)(3).

29. **"Property"** shall mean the property of the Estate, which shall be administered by the Debtor or the Chapter 12 Trustee.

30. **"Pro Rata"** shall mean in the same proportion that a Claim or Interest in a given Class bears to the aggregate amount of all Claims (including disputed Claim until allowed or disallowed) or the aggregate number of all Interest in such Class.

31. **"Secured Claim"** shall mean a Claim, the holder of which is vested with a perfected, non voidable Lien on Property in which the Debtors have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or other applicable non bankruptcy law, and is duly established in this case, to the extent of the value of such holder's interest in the Debtor's interest in such Property, as determined according to 11 U.S.C. Section 506.

32. **"Secured Creditor"** shall mean a Creditor who has a Secured Claim.

33. **"Trustee"** shall mean the standing Chapter 12 Trustee, Jose R. Carrión Morales, Esq.

34. **"Unsecured Claim"** shall mean a Claim, which is other than an Administrative Expense Claim, a Secured Claim or a Priority Claim (including a Priority Tax Claim or a Priority Wage Claim), including any Claim specified in 11 U.S.C. Sections 502(g), 502(h) or 502(l).

35. **"Unsecured Creditor"** shall mean a creditor that is a holder of an Allowed General Unsecured Claim.

36. **"Vesting of Property"** Upon full consummation of the plan, all of the property of the chapter 12 estate shall vest in the debtor.

37. **"Voluntary Petition"** shall mean the voluntary Petition for Relief filed by the Debtor on the Petition Date for cases 11-00716.

## ARTICLE II
## ASSETS AND LIABILITIES AS OF PETITION DATE

1.  ASSETS:

Debtor's asset composition as listed on Schedules A and B has remained substantially unchanged from that listed in the schedules filed with the Court.

Real property was scheduled in the aggregate amount of $2,500,000.00. Debtor owns two real properties located at State Road #451 and #111 Km. 0.8 at Eneas Ward, San Sebastian,

Puerto Rico. These properties are used as a dairy farm. The properties over which Debtors have interest are the following:

 (a) Dairy Farm, composed of dairy farm structures and a residential structure. Equipped with the milking building, storage area, milking parlor, water tank, porch, aluminum terrace, two water reserve tanks, generator, oxidation pond and dairy farm equipment. The same is operated over a lot of land of one hundred twenty five (125) cuerdas; composed of two real properties located at State Road #451 and #111 Km. 0.8 at Eneas Ward, San Sebastian, Puerto Rico. The properties are described as follows:

  i. Rustica: Radicada en el Barrio Eneas del Municipio de San Sebastián, Puerto Rico, con una cabida de cincuenta cuerdas, o sea, ciento noventa y seis mil quinientos diecinueve punto siete mil ochocientos metros cuadrados (196.519.7800 m.c.). En lindes por el Norte, con terrenos de Ignacio Hernández Romany; por el Este, con terrenos de Ignacio Hernández Romany, o sea, el remanente de la finca de la cual ésta se segrega; por el Sur, con terrenos de Ramón Rodriguez Molina, Anibal Lamourt Rodriguez, solar de la Puerto Rico Reconstruction Administration #31-19, #31-20 y #31-21, con los terrenos de Maria Luisa Lamourt e Isaías Vélez; y por el Oeste, con terrenos de David Monroig. Enclava una estructura de dos plantas dedicada a vaquería y equipo de ordeño.

  --- Inscrita folio 280 del tomo 288 del término municipal de San Sebastián, finca #15,188, inscripción séptima.

  ii. Rustica: Radicada en Eneas del Municipio de San Sebastián, Puerto Rico, con una cabida de setenta y cinco cuerdas de terreno equivalentes a veintinueve hectáreas, cuatro áreas, siete centares y ocho miliáreas, en lindes por el Norte, con terrenos de Víctor Álvarez, William Fuentes Adames y Rogelio González Rivera; por el Este, con terrenos de Ignacio Hernández Romany, o sea, remanente de la finca de la cual ésta se segrega; por el Sur, con un solar de la Puerto Rico Reconstruction Administration #31-21, con terrenos de Maria Luisa Lamourt, con un camino público y con terrenos de Isaías Vélez; y por el Oeste, con terrenos de David Monroig, Gregorio Guzmán Ramos, antes Rogelio Pérez Cardona y hoy Héctor Deliz, José Pérez Torres, Rafael Lamourt, Sucesión Juan Antonio López y José Isabel Colon Pérez.

--- Inscrita folio 259 del tomo 500 del término municipal de San Sebastián, finca #15,184, inscripción sexta.

(b) Debtors own 100% un-liquidated interest over several personal assets. Personal property was scheduled in the total amount of $981,030.00 of which $2,100.00 were listed as household goods and clothing; $180.00 as cash; $5,000.00 as a certificate of deposit; $300.00 as fine and fantasy jewelry; $800.00 as a tax refund; $150.00 as utilities security bond; $40,000.00 were listed as machinery, tractor or farming equipment for $15,000.00, and supplies used in business; $7,000.00 for a Ford Explorer XLT200; $3,000.00 for a Dodge RAM 2001; and $151,500.00 were listed as farm animals, particularly cattle cows. Also, Debtors listed the interest over the milk production rights issued under the license number 3360 comprised of 36,000 production liters with an approximate fair market value of $756,000.00. Debtor estimates the current fair market value of each liter in $21.00.

A reconciliation of assets and projected realization in the event of a liquidation scenario in the Liquidation Analysis enclosed as **Exhibit A**.

2. LIABILITIES:

Debtor's schedules of liabilities as referenced to the schedules and proof of claims filed in this case indicated that secured claims approximate $2,837,335.84. General unsecured creditors approximate $40,565.62. Unsecured priority claims under 11 U.S.C. §507(a)(8) approximate $0.00, since debtors are bona fide farmers. Enclosed certificate of bona fide farmers as **Exhibit G.**

## ARTICLE III

## DESIGNATION OF CLAIMS AND INTEREST

A. DESIGNATION OF CLAIMS

The Plan divides the creditors into FIVE (5) classes. The classes of creditors are as follows:

1. **CLASS 1 – TRUSTEE EXPENSES**

    Class 1 shall consist of the Chapter 12 trustee statutory commission computed pursuant to 28 U.S.C. § 586(e).

2. **CLASS 2 – ADMINISTRATIVE EXPENSES**

    Shall consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code, including but not limited fees and expenses of Debtors' counsel and other professionals as may be allowed by the Bankruptcy Court upon application therefore and after notice and hearing according to the Bankruptcy Code and Rules, any unpaid taxes or fees accrued since petition date and cost accrued since the petition date.

    These amounts will be determined and fixed upon written application to the Court.

3. **CLASS 3 – BANCO POPULAR PUERTO RICO – SECURED CLAIM 1, 2 and 3**

    Banco Popular Puerto Rico has a balance pending in the amount of $2,837,335.84. This amount is secured by a chattel mortgage over debtor's milk production rights known as "milk quota" at rate of $21.00 authorized to debtor by Oficina de Reglamentacion de Industria Lechera (ORIL). Also, creditor holds as collateral several mortgage promissory notes encumbering debtor's real property, meaning the lot which comprises the dairy farm. In addition, Banco Popular Puerto Rico has received from Debtor an assignment of a portion of the milk production payments paid weekly by Suiza Dairy, Inc. With the filing of this Chapter 12 plan all assignments in favor of Creditor, Banco Popular Puerto Rico are discontinued meaning that Suiza Dairy, Inc. will pay directly to Debtor.

4. **CLASS 4 – CRIM – SECURED CLAIM, PROOF OF CLAIM NO. 5**

    Centro de Recaudación de Ingresos Municipales ("CRIM") filed a proof of claim in the amount of $11,972.06 (Claim no. 5). The amounts claimed by creditor CRIM are not owed by debtors. The property number pertains to another property not belonging to them. Debtors are exempt of property taxes since they are bona fide farmers. Debtors reviewed the property tax exemption at the regional office of CRIM at Aguadilla. As per debtors'

certification the property is current in the property taxes. Creditor will not receive any kind of disbursement from the Chapter 12 Trustee. Enclosed certification as Exhibit H; see also Exhibit G.

5. **CLASS 5 – GENERAL UNSECURED CREDITORS**

General unsecured creditors considering those listed by debtors, those who filed a proof of claim and those secured creditors, who have agreed to be considered part of their claim as unsecured, are included in this class. The debt under this class has been estimated by debtor in the amount of no more than $40,565.62, including the corresponding interest prime rate.

**ARTICLE IV**
**TREATMENT FOR CLASSES OF CLAIMS AND INTEREST**

1. **CLASS 1 – TRUSTEE ADMINISTRATIVE**

    The Chapter 12 trustee shall receive and retain as the trustee's percentage fee under this plan an amount equal to ten percent (10%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount not to exceed $450,000.00, five percent (5%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount higher than the $450,000.01 but in excess of $1,000,000.00 and reasonable compensation not to exceed three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount that exceeds the before mentioned amount of $1,000,000.00.

2. **CLASS 2 – ADMINISTRATIVE EXPENSES**

    Shall consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code. This class shall be paid by the trustee in cash and in full as soon as practicable, on the later of (a) the Effective Date or (b) during the first year following the confirmation of the plan. These payments will be made by the Chapter 12 trustee.

3. **CLASS 3 – BANCO POPULAR PUERTO RICO – SECURED CLAIM 1, 2 and 3**

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan. Considering the value of the properties serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be $2,837,335.84. Claim No. 1 for $43,649.76 will be paid in full by the Chapter 12 Trustee through the plan. Debtors will surrender one of the real properties listed in Schedule A to Banco Popular Puerto Rico. At the moment, Debtors cannot determine which of the real property is the one to be surrendered since there is confusion regarding the description in the Public Registry and the information provided from the documents and maps of Centro de Recaudacion Ingresos Municipales, herein CRIM. The confusion arises from the maps used in CRIM and the description provided in the deed when the loan was acquired.

It is Debtors, understanding and as reflected in the dairy farms blueprints, the dairy Farm operation is in the lot of land compose of 75 cuerdas, registered at the Public Registry of San Sebastian, farm number 15,184, at Page 257, Volume 288, but in accordance to the bank records the operation is situated in the lot of land of 50 cuerdas, registered at the Public Registry of San Sebastian, farm number 15,188, at Page 218, Volume 288.

Debtors have contacted a land surveyor and have visited the Federal Department of Agriculture and the CRIM's regional office to ascertain the property where the dairy farm is located and property where the dairy farm structure in and as to which lot is occupying the Dairy Farm structures.

It is Debtors intention to surrender the vacant lot. It is Debtors understanding that the vancant lot is the one compose of 50 cuerdas registered at the Public Registry of San Sebastian, farm number 15,188, at Page 218, Volume 288, valued in accordance to the appraisal herein submitted as **Exhibit F** in $750,000.00, amount to be applied to the debt owe to creditor Banco Popular Puerto Rico. **Upon the result of the land survey, Debtors**

**will revise the plan as needed in order to reflect the correct property to be surrendered to Banco Popular Puerto Rico and the amount to be applied to the loan.**

As a result of the surrendering of the property described above, the debt will be reduced to the amount $2,087,335.84. In regards to the mentioned remaining balance the same will be paid as follows:

(i.) Creditor will receive during the first **seven (7)** months of the plan the amount of $4,400.00, meaning from May 2011 up to **November** 2011. After the **seven (7)** months elapse, Creditor will start receiving the restructured payment as established below.

**Debt Balance Restructuring Upon Confirmation –** On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full. The outstanding secured balance has been estimated in $2,087,335.84. With the filing of this Chapter 12 plan all assignments in favor of Creditor, Banco Popular Puerto Rico are discontinued meaning that Suiza Dairy, Inc. will pay directly to Debtor.

(i.) Creditor will commence receiving the restructured payment of the debt on **December 2011**. The payments to be received by creditor will be on the basis of consecutive monthly installments providing for the payment of the face amount with interests computed at a fixed 3.25%, during a period of **fifty three (53)** months but on amortization computed over thirty (30) years. Banco Popular Puerto Rico will receive the amount of $9,384.22, out of which $300.00 will be use to set up an escrow account. The remaining amount of $9,084.22 will be applied to interest and principal as per the loan's amortization table; the before mentioned amount will commence on **December** 2011 up to April 2016.

(ii.) Upon completion of the plan, the remaining secured balance of **$1,892,077.08** and beginning on May 2016 and up to April 2023, that is for eighty four (84) months, Banco Popular Puerto Rico will commence receiving payment that will be at an interest rate of

    3.75% and amortized over a period of twenty (20) years. Starting in the 61 month of this plan, this discounted amount will be paid, with interest computed at a fixed rate of 3.75%, but on amortization computed over twenty (20) years, payable in monthly installments of no more than **$11,517.90,** of which $300.00 are to be applied to an escrow account and the remaining **$11,217.90** to be applied to principal and interest as per the amortization table included in Exhibit D. These payments will start following the consummation of the plan and will continue until April 2023. Refer to the loan calculator table**s** enclosed herein as **Exhibit D**.

(iii.) After the eighty four (84) months period ha**s** elapsed Debtors restructure the remaining balance of **$1,383,385.10**. Beginning on May 2023 and up until full payment on April 2033, Banco Popular Puerto Rico will commence receiving payment that will be at an interest rate of 4.25% and amortized over a period of ten (10) years. Starting on May 2023 debtors will commence making payments of **$14,471.06**, of which $300.00, will be applied to an escrow account and the remaining **$14,171.06** to be applied to principal and interest as per the loan amortization table enclosed. Refer to **Exhibit D**.

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance. Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid by Suiza Dairy, Inc.

The payments proposed derive from the milk production proceeds. Creditor will receive monthly payments through the Chapter 12 Trustee as described above. Upon completion of the plan will continue making monthly payments directly to creditor as described above up until full payment of the outstanding secured claim as stated in the reorganization plan.

Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 5 of

the plan.

**6. CLASS 4 – CRIM – SECURED CLAIM, PROOF OF CLAIM NO. 5**

Centro de Recaudación de Ingresos Municipales ("CRIM") filed a proof of claim in the amount of $11,972.06 (Claim no. 5). The amounts claimed by creditor CRIM are not owed by debtors. The property number pertains to another property not belonging to them. Debtors are exempt of property taxes since they are bona fide farmers. Debtors reviewed the property tax exemption at the regional office of CRIM at Aguadilla. As per debtors' certification the property is current in the property taxes. Creditor will not receive any kind of disbursement from the Chapter 12 Trustee. Enclosed certification as Exhibit H; see also Exhibit G.

**7. CLASS 5 – GENERAL UNSECURED CREDITORS**

General unsecured creditors considering those listed by debtors, those who filed a proof of claim and those secured creditors, who have agreed to be considered part of their claim as unsecured, are included in this class. The debt under this class has been estimated by debtor in the amount of no more than $40,565.62, including the corresponding interest prime rate.

The Trustee will disburse payments to the secured creditors described above. The proposed payment schedule through the Chapter 12 Trustee for all creditors will be:

- Monthly payments of $6,000.00 for **seven (7)** months, for a total of **$42,000.00** and;
- Monthly payments of $11,440.00 for **fifty three (53)** months, for a total of **$606,320.00**.

The total amount of the plan base is **$648,320.00**. These payments will be paid directly by Debtor to the trustee from the business operations, named Vaqueria Montania.

Each Class 5 claimant shall receive from the trustee 100% dividends plus interest (3.25%) during a period of five (5) years, these payments starting thirty (30) days after the confirmation of the plan, on the basis of consecutive monthly installments providing for the payment of the face

amount, as per the Schedule Payments under the Plan of Reorganization enclosed herein as **Exhibit C**.

## ARTICLE V
## PAYMENT OF UNSECURED PRIORITY CLAIMS
## UNDER 11 U.S.C. SECTION 507(a)(8)

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, will be paid as stated below. Debtor estimates the debt as follows:

a. Debtors estimate unsecured priority creditor to be $0.00, since they are bona fide farmers and are under the provisions of a tax exemption.

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, shall be paid by the Chapter 12 Trustee through monthly installments commencing on the effective date of the plan. The funds will be obtained from the business operations, named Vaqueria Montania, on the basis of consecutive installments remitted biweekly and directly from Suiza Dairy, Inc. to the debtors. See Schedule Payments under the Plan of Reorganization, **Exhibit C**.

## ARTICLE VI
## PENDING LITIGATION

Debtor states that, as of this date, to the best knowledge and belief there is no pending or threatened litigation that may affect the liability or asset composition of their personal business.

## ARTICLE VII
## MEANS OF EXECUTION OF THE PLAN AND FEASIBILITY

Debtors shall have sufficient funds to make all payments then due under this Plan. The funds will be obtained from the business operations, named Vaqueria Montania. A set of business projections, with the bases thereof, is included herein as **Exhibit B**.

On the Consummation Date of the plan, the operation of the named business, all estate assets and allowed claims and valid liens, as set forth in the plan, shall be and become the general responsibility of the reorganized debtors, which shall thereafter have the responsibility for the

management, control and administration thereof.

Management of debtors' affairs, collection of moneys and distribution to creditors, will be under the control and supervision of the reorganized debtor, which will assume the same role the debtors in possession have assume through this reorganization process.

## ARTICLE VIII
## DISCHARGE OF CLAIMS

Except as otherwise provided for in this Chapter 12 Plan or in the Order of Confirmation, the rights granted by this Plan and the payment and distributions to be made hereunder, shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and claims of any kind, nature or description whatsoever against the Debtors.

Upon completing all conditions precedent to the consummation of this plan, all existing claims shall be deemed to be exchanged, satisfied, discharged and release in full; and all holders of claims shall be precluded from asserting any other or future claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date, whether or not such holder filed a proof of claim. Upon full payment of the amounts compromised and detailed herein, secured creditors will turnover to the debtor for cancellation purposes of promissory notes encumbering personal and real property pertaining to this estate.

The order of confirmation of the Plan shall constitute an injunction against the pursuit of any claim or Equity Interest, whether or not a proof of claim or proof of interest based on any such debt, liability, or interest is filed or deemed filed, under 11 U.S.C. 501, such claim is allowed under 11 U.S.C. 502 or the holder of such claim has accepted this Plan in the manner set forth herein.

## ARTICLE IX
## OBJECTIONS TO CLAIMS

The debtor, the trustee, both at their option, or upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount before the closing of the case. If an objection is made, payment to such claimants will be made only after the entry of a final

order by the Court allowing such claim and in accordance with the provisions of the Plan governing such class to which such claims belongs.

The claim of any general unsecured creditor who fails to file a proof of claim or that files its claim after the fixed claims bar date be disallowed by confirmation hearing.

### ARTICLE X
### EXECUTORY CONTRACTS

Except as stated herein, debtor assumes all unexpired leases and executory contracts to which it is a party and which have not been expressly rejected pursuant to 11 U.S.C. Section 365(a). Specifically, debtors have assumed throughout the bankruptcy proceedings the following contracts:

    a. Suiza Dairy, Inc. Corporation: Milk Production Contract.

### ARTICLE XI
### PROVISIONS FOR THE MODIFICATION OF THE PLAN

The debtor may propose amendments or modifications of this Plan at any time prior to its confirmation pursuant to 11 U.S.C. 1223. After confirmation of the Plan, the Reorganized Debtor may, with the approval of the Court and as long as it does not adversely affect the interest of the creditors, remedy any defect or omission, in such manner as may be necessary to carry out the purposes and effects of the same.

### ARTICLE XII
### CLOSING OF THE CASE

At such time as the case has been fully consummated, this case shall be closed. In order for the case to be close, the trustee shall file a final report and account showing that the case has been fully administered and the Plan has been fully consummated. The Court may conduct a hearing upon application thereof and after notice to all creditors and parties in interest. Thereafter an order approving the trustee's report and closing of the case shall be entered.

### ARTICLE XIII
### COMPLIANCE WITH LAWS AND GOOD FAITH

Debtor believes that the plan complies with all provisions of chapter 12 and any other

applicable provision of the Bankruptcy Code, that the plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

## ARTICLE XIV
## CHAPTER 7 COMPARISON

Based upon the values of the debtor's assets and the amount of secured and unsecured claims as set forth in the debtor's chapter 12 statement, the debtor believes that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each estate of the debtor were liquidated under chapter 7 of the Bankruptcy Code. Refer to Liquidation Analysis enclosed as **Exhibit A**.

## ARTICLE XV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by this Plan, to enable the debtor to consummate any and all proceedings which they may bring before or after the entry of the order of confirmation, in order to carry out the provisions of this Plan, specifically meaning until payment of all creditors as listed in the Treatment of Classes, Article IV, supra.

**RESPECTFULLY SUMITTED,**

In Caguas, Puerto Rico, this 30th day of March of 2011.

**VICTOR GRATACOS DIAZ LAW OFFICE**
PO BOX 7571
CAGUAS, PR 00726
PHONE: (787) 746-4772 & FAX: (787) 746-3633

/s/ Víctor Gratacós-Díaz (127906)

**Isa M. Gratacós- Padró**
/s/ Isa M. Gratacós- Padró (221209)