54-018

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

In Re:

**RAMON E. NAVEDO RIVERA**
**TANIA ORONA JIMENEZ**

           Debtors

Case No. 11-00716 (BKT)

Chapter 12

## OBJECTION TO CONFIRMATION OF CHAPTER 12 PLAN

TO THE HONORABLE COURT:

    Now comes, secured creditor, Banco Popular de Puerto Rico ("Banco Popular"), represented by its undersigned legal counsel, and respectfully states and prays:

    1.    On March 30, 2011, Debtors filed their Fist Amended Chapter 12 Plan (hereinafter, "the Plan"). (*See*, docket No. 37)

    2.    The Plan classifies Banco Popular in class 3, proposing the surrender of one of the two parcels that comprise the debtors' dairy farm operating, to Banco Popular, as satisfaction for a portion of the secured debt amount to $750,000.00 in accordance with an appraisal submitted as rendered by Maria A. Gaztambide dated February 23, 2011 (See Exhibit F of Plan).

    3.    The property proposed to be surrendered is a 50-cuerda parcel of agricultural land, described in the Registry of Property of San Sebastian as property no. 15,188.

    4.    At the present time, this property is subject to two mortgage obligations, one in the amount of $525,000.00, as per deed no. 21 before Notary Public Francisco J. Arraiza Donate dated February 7, 2006. The property is also subject to a second mortgage for the sum of $50,000.00 as per deed no. 102 before Notary Public Francisco J. Arraiza Donate dated August 3, 2006. Debtors intend to pay the $50,000.00 note represented by proof of claim no. 1 in full through the Plan.

Objection to Confirmation
Case No. 11-00716 (BKT)
Page -2-

5. As a result of the surrender of property 15,188 above, the debt ostensibly will be reduced to the amount $2,087,335.84, which will then be paid in full through the Plan as proposed by debtors.

6. The Plan as proposed fails to satisfy §1225(a)(5) as the proposed treatment of Banco Popular's secured claim by means of the surrender of the property for a fixed dollar value based on an appraisal fails to provide the "indubitable equivalent" of the allowed amount of the secured claim of the Bank.

7. According to Collier,

> A "surrender" of property means that the debtor relinquishes the property to the secured creditor. The secured creditor then takes possession of the property and liquidates the property in accordance with applicable nonbankruptcy law. If liquidation yields a surplus, the creditor must pay the surplus to holders of junior liens or, if there are none, return it to the debtor. If liquidation produces a deficiency, the creditor may assert the deficiency as an unsecured claim and receive its pro rata share of payments made under the plan with regard to unsecured claims…
>
> If the plan, however, purports to attach any conditions to the debtor's surrender of the property, such as specifying the amount of debt to be forgiven as a result of the surrender, the debtor is not surrendering that property. Rather the debtor is transferring the property to the secured creditor in satisfaction of debt.

L. King, Collier on Bankruptcy, ¶ 1225.03[5], pp. 1225-26 (15th ed. Rev.).

7. Recognizing that the phrase "indubitable equivalence" contemplates nonmonetary satisfaction of claims, the courts have held that stringent standards of equivalence are required with respect to proposals such as that proposed by debtors, or non-cash treatment.

> Satisfaction of a secured claim by distributions of property should only be permitted is a showing can be made by a debtor that the property transferred is the equivalent of cash to be paid on sale of the property or of installment payments secured by a continuing lien on the property… Certainly, indubitable equivalent treatment should not be less favorable than a deferred payment or sale provision …

> Put another way, the preponderance of the evidence in the form of the appraiser's testimony may demonstrate a property value at a certain dollar amount. However, because of the imprecision inherent in this kind of proof, the dollar value shown may not necessarily constitute the indubitable amount equivalent of a cash payment to the creditor in a like amount.

Matter of Martindale, 125 B.R. 32, 38-39 (Bankr. D. Idaho 1991).

8. In light of these concerns, courts have approached valuation conservatively for several reasons:

   a. First, such plans shift the burden of sale of the returned collateral from the debtor to the secured creditor, together with the risk of loss and gain. In re Simons, 113 B.R. 942, 947 (Bankr. W.D. Tex. 1990). In the present case, the potential for loss is greater than for gain because of the nature of the property and the depressed nature of the market of sale of this type of property (raw agricultural acreage).

   b. Second, the secured creditor will earn no interest on the portion of the secured claim attributed to the returned property until it is sold and converted into cash; in effect, it receives a partial payment in kind that must be turned into cash before a return is realized, which controverts the lender's bargain with the debtor. Id.

   c. Third, valuation is not an exact science, and the chance for error always exists. A conservative approach should be taken in order to protect the secured creditor in this regard. Id.

9. Debtors seek to take the appraisal value of the entire farm, which was appraised in unitary fashion by the appraiser, and pro-rating the per-acre values to a portion of the farm. However, the case law provides that the secured creditor cannot be forced to accept a value

Objection to Confirmation
Case No. 11-00716 (BKT)
Page -4-

based on a per acre value as established for a whole farm but instead the parcels must be valued separately in light of the proposed distribution. See, e.g., In re Braxton, 124 B.R.. 870, 872-873 (Bankr. N.D.Fla. 1991): "What the debtors have done has gone over their entire farm, and selected those portions of the farm, wherever they may be, which they cannot use to generate income and have attempted to carve those out and surrender them."

    a.    It is very clear from the report of the surveyor Julio C. Soto Serrano, on file herein at docket 55, that the property to be surrendered is in an inferior and landlocked position in respect to debtors' farm. The parcel is also topographically uneven, which renders it less than ideal as a stand-alone parcel for dairy farming operations.

    b.    The report of Ag. Serrano also indicates that a survey will be required, as the metes and bounds description as per the property registry do not coincide with the visual demarcations of the properties as seen from surface structures such as fences. In his report, the surveyor clearly states that he found differences between the existing survey plan, and the boundary lines from the existing fences, and that in order to certify such differences a full survey of both properties would be required.

    c.    Upon information and belief, the descriptions of the properties existing at the Registry of Property are inverted and must be rectified, which is another reason a survey will be required. The costs of a survey are estimated at $25,000.00.

    d.    The farm was valued as an entire tract by the appraiser. When the farm is split off into two pieces and access to one part limited, the value of that portion which has been severed would necessarily be different from that of the farm as a whole. See, In re Branch, 127 B.R. 891, 893 (Bankr. N.D.Fla. 1991).

Objection to Confirmation
Case No. 11-00716 (BKT)
Page -5-

10. Debtors ignore that in the ordinary scenario, unwanted or unaffordable property is surrendered to the secured creditor for foreclosure. In this scenario, the lender proceeds toward the realization of its interest as provided for by state law. As per proof of claim no. 3 on file herein, and specifically, mortgage deed no. 21 (which secures BPPR's debt over property no. 15,188) the parties stipulated a minimum bid for the <u>first</u> foreclosure sale of $525,000.00. See deed no. 21 at page 12. This amount is required to be stipulated as per Article 170 of the Mortgage Law (30 L.P.R.A. § 2566). During the judicial sale phase of the foreclosure process, consisting of three judicial sales, the minimum bid for the second sale is 2/3 of the amount of the first minimum bid (or $349,996.50) and ½ of the minimum bid for the third sale (or $262,500.00). See 30 L.P.R.A. § 2721. Therefore, according to local law, in a foreclosure sale, Banco Popular is not required to accept any amount less than minimum bid, which bid is required to be paid <u>in cash at the moment of the sale</u>. 30 L.P.R.A. § 2723 (fourth).

11. Debtors must prove to the Court that the proposed surrender to Banco Popular of the property for a specific amount to be credited to the debt, thereby sidestepping the foreclosure process, is fair and equitable to Banco Popular and constitutive of indubitable equivalence of payment of the allowed secured claim.

> Perhaps, at a different time in a different real estate market, a plan proposing to surrender mortgaged land to the mortgagee in return for satisfaction of the debt may be confirmable. However, in an uncertain market, it is doubtful that such a plan offers the creditor the indubitable equivalent of its claim unless the appraised value of the property, demonstrated by competent proof, far exceeds the amount of the debt to be paid…One court has defined the elusive term "indubitable" as meaning "too evident to be doubted" …suggesting that a higher standard of proof is required for confirmation of such plans.

<u>Matter of Martindale</u>, 125 B.R. 32, 38 (Bankr. D. Idaho 1991). See also, In re Walat Farms, Inc., 70 B.R. 330 (Bankr. E.D. Mich. 1987).

Objection to Confirmation
Case No. 11-00716 (BKT)
Page -6-

12. Here, debtors are trying to obtain a windfall by off-loading an undesirable property onto the lender. The only fair result is for debtors to surrender the property and allow the property to be sold at foreclosure, with amount resulting from that process credited to the debt. In a very poor market for agricultural property generally, an unusable, landlocked property accessible by only a dirt road is unlikely to sell at foreclosure, thereby allowing debtors only the minimum amount from the third judicial sale of $262,500.00 to be credited to the debt.

13. The appraisal also fails to establish the liquidation value for the property to be surrendered. Liquidation value must be established by the Court in order to determine any surrender value. In re Simons, 113 B.R. 942, 947-948 (Bankr. W.D. Tex. 1990). Banco Popular does not hold agriculture property for use nor resale. The Bank can only do what the debtors refuse to do, and that is sell the property. Debtors want to transfer the market risk to Banco Popular which the Bank bargained for only to the extent of the minimum bid established in the mortgage deed. "The determination of whether partial dirt for debt distribution will provide the creditor with the indubitable equivalence of its secured claim must be made on a case-by-case basis. Such a determination must be subject to extremely close scrutiny." In re Arnold and Baker Farms, 177 B.R. 648, 662 (9th Cir. BAP 1994).

14. In the alternative that this Court were to use a fair market value standard to determine the value of the creditor's interest in a property to be surrendered, the Court must determine the reasonable projected costs of holding and resale of the property to be incurred by the creditor. Matter of Martindale, 125 B.R. 32, 35 (Bankr. D. Idaho 1991).

15. Debtors resort to an inflated value for the realty because unless high value is set for the surrender, debtors will be unable to establish feasibility. As the Bank argued in its opposition to use of cash collateral at docket 38, the debtors' failure to service the loan between

Objection to Confirmation
Case No. 11-00716 (BKT)
Page -7-

the 2008 bankruptcy and the instant proceeding caused in excess of $500,000.00 in interest to accrue. This is the reality that the debtors brought upon themselves, and now they seek to escape the consequences by dumping useless property onto the Bank at an inflated value. This Plan has not been proposed in good faith, and cannot be confirmed according to § 1225(a)(3). See, In re Braxton, 124 B.R.. 870, 875 (Bankr. N.D.Fla. 1991).

16. In addition, the interest rate during the plan and during the post-bankruptcy restructuring period does not provide adequate protection to Banco Popular because the interest to be paid does not consider interest rate adjustments. The original obligations were of no greater maturity than 7 years. The proposed restructuring does not provide any risk premium to the Bank, as it must.

WHEREFORE, BPPR requests the Court to deny confirmation of the First Amended Chapter 12 plan dated March 30, 2011.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 19th day of September 2011.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date a true and exact copy of the foregoing has been served by the CM/ECF system to all registered users, including Counsel for debtor and the office of the Chapter 12 Trustee.

                              **O'NEILL & GILMORE**
                              Legal counsel for Banco Popular
                              Citibank Towers, Suite 1701
                              #252 Ponce de Leon Avenue
                              San Juan, Puerto Rico 00918
                              Tel. 787-620-0670/Fax. 787-620-0671

                              *s/Charles P. Gilmore*
By: _____
                       Charles P. Gilmore
                       USDC No. 209614